CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 2 1 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOHNNY F. GODFREY,<br>Plaintiff, | )<br>) | Civil Action No. 7:06-cv-00360 |
| v. | )<br>)<br>) | **MEMORANDUM OPINION** |
| DANVILLE CITY JAIL<br>OFFICIALS, et. al.,<br>Defendant(s). | )<br>)<br>)<br>) | By: Hon. James C. Turk<br>Senior United States District Judge |

Johnny F. Godfrey, a Virginia inmate, filed this action as a civil rights complaint under 42 U.S.C. § 1983. Upon consideration of the complaint as amended in numerous, rambling and repetitious submissions, the court finds that all claims must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted, except his claims that certain medical officials at the Danville City Jail were deliberately indifferent to his serious medical needs.

## I. Procedural Background

The pleadings filed as the complaint in this case were originally filed as motions to amend and motions for interlocutory injunctive relief in Civil Action No. 7:06-cv-00187; this prior case raised claims against Washington County Police officers and officials at the Southwestern Virginia Regional Jail (SWVRJ). Finding that claims raised in the new pleadings were not properly joined to the earlier action, the court directed the clerk to photocopy the pleadings and file them as this new civil action, raising plaintiff's claims that officials at the Danville City Jail were depriving him of his constitutional right to access the courts, particularly related to a scheduled sentencing hearing at the end of June 2006. The court then entered an order, directing Godfrey to amend this new action to name appropriate defendants and to offer specific information about the criminal proceedings against him in Danville.

Godfrey amended his access to courts claims, but also raised additional claims alleging denial of medical care and unconstitutional living conditions at the Danville Jail as well. The court granted the amendments and dismissed all access to courts claims, including Godfrey's claim for

1

the amendments and dismissed all access to courts claims, including Godfrey's claim for interlocutory injunctive relief. (Opinion/Order 6-28-06). Since then, Godfrey has filed several additional documents, listing both case numbers and discussing issues related to both cases. **This confusion of the issues has greatly hindered the progress of his case.** He also alleges additional violations of his rights at Powhatan Correctional Center. The court will allow these amendments, but all of the claims as amended must be dismissed for reasons herein stated.

## II. Claims Not Part of This Case

By previous opinion and order, in this case or in Civil Action No. 7:06-cv-00187 before this case was created, the court dismissed several of Godfrey's claims, as follows:

* All claims challenging the fact or length of Godfrey's detention or the fairness of his trial proceedings;[1]

* All claims against James Cupp or his supervisor, the public defenders appointed to represent Godfrey in Danville criminal matters;

* All claims that Danville Jail officials denied Godfrey his right to access the courts or to access legal materials while he was housed at that jail; and

* All claims against Polk County, North Carolina, and officials there; and

* All claims alleging problems with grievance procedures, unconstitutional living conditions, retaliation and harassment by guards at SWVRJ.

Godfrey's recent submissions continue to raise allegations in support or expansion of these dismissed claims. For example, he seeks to sue the City of Danville for denial of a fair trial and coercing him into signing a plea agreement; he also wants to sue the Danville City Circuit Court for refusing to accept his pro se motions. These allegations, like several claims already dismissed, challenge the

---

[1] As explained at length in previous opinions, if Godfrey wishes to challenge the fact or length of his confinement, he must first exhaust state court remedies. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 489-90 (1973). As Godfrey has never presented this court with any evidence that he has raised his habeas claims before the Supreme Court of Virginia as required to exhaust state court remedies in Virginia, he may not proceed with a habeas petition in this court at this time under 28 U.S.C. § 2241 or 28 U.S.C. § 2254. He also may not raise claims for monetary damages based on the allegedly unconstitutional conduct of state officials that contributed to his being convicted. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).

2

fact and/or length of his confinement. For the same reasons stated in the court's earlier opinions and orders, these allegations do not state any actionable claim under § 1983 and must be dismissed, pursuant to § 1915A. His new claim that the Danville City Circuit Court violated his due process rights by not addressing his habeas petition must be dismissed, because the court, as an arm of the state, is not subject to suit under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).

The following claims are not pending in this action because they are (or were) pending in Civil Action No. 7:06-cv-00187:

* All claims concerning plaintiff's allegedly illegal extradition from North Carolina to Virginia; and

* All claims alleging deliberate indifference to plaintiff's medical problems and interference with access to courts at the Southwest Virginia Regional Jail.

To the extent that Godfrey's recent submissions attempt to re-insert these claims or related claims to this case, such claims are dismissed without prejudice.[2] Godfrey is hereby notified that he may litigate these claims only in Civil Action No. 7:06-cv-00187.

### III. Amended Claims
### A. Godfrey's allegations

Godfrey complains at length that he was denied medical care while at the Danville Regional Jail. He alleges that he has numerous, serious medical conditions for which he was being treated before his incarceration: problems with heart, lungs (asthma symptoms), spine and neck (severe pain), eyes (past lens implant surgeries and need for eye glasses), diabetes (need for medication and diet), and cancer. He alleges that Danville medical officials denied him proper medication and other necessary treatments, did not obtain proper medical records, and did not allow him to continue seeing the specialists who were treating him for these conditions. After he complained about

---

[2] Godfrey seeks to sue the City of Danville for his transfer from North Carolina to Virginia. He does not allege facts indicating that the City has a policy of removing suspects from other states without following proper extradition procedures. Therefore, he fails to state any actionable § 1983 claim against the City. See Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978).

3

needing medical care, the nurse placed him in K-block ("the hole") for nine days. Another inmate took his food on one occasion and verbally and physically "assaulted" him, but when he told officers about the incident, they did nothing.

Although Godfrey alleges that he was denied all medical treatment, his own allegations indicate that he saw Dr. Wang, who prescribed medications for him. Godfrey alleges that the medications were not "right" and that he still suffered great discomfort from his medical conditions. He also faults Dr. Wang for not examining him more thoroughly, not reviewing his medical records, not referring him to specialists, and not seeing him more often. Medical staff also allegedly did not order all of Godfrey's prescription medications even after he gave them a list of the issuing pharmacies. He claims that improper medication or lack of medication and treatment led to his July 2006 heart attack and aggravation of his other medical conditions.

Godfrey also complains about living conditions at the jail. He alleges that the diet he received at the jail was not appropriate for a diabetic and that the high temperatures in the cells aggravated his pain and shortness of breath. He claims that the noise in the cell blocks, combined with improper medication, kept him from sleeping, that he trembled, his face would go numb, he was nauseated and blacked out, and his kidneys did not function well.

In July 2006, while Godfrey was at the Danville jail, he allegedly suffered a massive heart attack.[3] No medical staff were present at the jail, but an emergency medical technician (EMT) rushed him to a Danville hospital, where he underwent emergency surgery. After his release from the hospital, jail officials placed him in isolation and allegedly did not give him the medications ordered by the surgeon. Two days later Godfrey was transferred to Powhatan Correctional Center (PCC), a facility of the Virginia Department of Corrections (VDOC). He claims that he did not receive food or water during this trip of several hours; as a result, when he arrived at PCC, he had to be rushed to a hospital. He alleges that this emergency occurred because Danville jail officers had not informed VDOC officials of his medical problems or his need for special medications or

---

[3]Godfrey gives different dates for this surgery–July 5 or 14, 2006.

4

because someone had falsified his medical records to make it look like nothing was wrong with him. Once Godfrey was returned to PCC, he was allegedly placed in a filthy cell, very hot, with no water fountain. Godfrey claims that Danville officials deliberately caused the VDOC to classify him to PCC, knowing that it was old, dirty, and ill-equipped to treat his serious medical problems. He claims that because of the heat and bad food at PCC, he lost fourteen pounds in three weeks.

## B. Applicable Law

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976). A constitutional violation in this context involves both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999); Sheldon v. C/O Pezley, 49 F.3d 1312, 1316 (8th Cir. 1995). The subjective component is met if a prison official is "deliberately indifferent," that is if he "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998). A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975). Moreover, mere negligence in diagnosis or treatment decisions does not state a federal claim. Estelle, 429 U.S. at 105-106; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

To bring a medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Prison personnel may rely on the

5

opinion of the medical staff as to the proper course of treatment. Id.; Smith v. Berry, 985 F.2d 180, 184 (4th Cir. 1993)(affirming directed verdict for prison guards not in position to "act meaningfully" with regard to inmate's medical needs).

The Eighth Amendment also protects prisoners from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). In order to state such a claim, a plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and (2) that, subjectively, the defendant prison officials acted with "deliberate indifference" with regard to the conditions. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective element requires a showing that plaintiff has sustained a serious or significant mental or physical injury as a result of the challenged conditions. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993). To satisfy the subjective element, plaintiff must show that each defendant official was aware of facts from which he could draw an inference that a substantial risk of harm existed, that he actually drew that inference, and then disregarded the risk by failing to take "reasonable measures" to alleviate the risk. Farmer, 511 U.S. at 832, 837.

### C. Analysis

The court must liberally construe pleadings filed by a pro se litigant and allow him to amend to offer supporting evidence, unless it is beyond doubt that he could prove no set of facts entitling him to relief. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Liberally construing Godfrey's complaint as repeatedly amended, the court finds that he has alleged facts stating possible deliberate indifference claims against three named defendants at the Danville City Jail: Dr. Wang, the Danville City Jail medical director, and an unknown nurse. It is clear from Godfrey's allegations that Dr. Wang examined him and prescribed some treatment for him, including numerous medications. Godfrey repeatedly alleges, however, that these defendants did not provide him with proper medication and other treatment for several serious medical conditions, including his heart conditions and his severe back and neck pain, that were known to them from Godfrey's requests for care and from his medical

6

records. Taking these allegations in the light most favorable to the plaintiff, the court concludes that they are sufficient to state possible claims that the defendants knew of, and did not provide necessary treatment for, some of Godfrey's many medical problems. Defendants may well be able to prove on summary judgment that the jail staff provided a course of treatment for all Godfrey's medical conditions that were known to them and that Godfrey simply disagreed with this treatment, instead seeking to return to the course of treatment previously prescribed for him by other doctors. The court cannot make this finding from the existing record, however. Therefore, the court will allow the claims against the three listed defendants to go forward at this time.

All Godfrey's other claims about denial of medical care by other individuals, however, must be dismissed, pursuant to § 1915A. First, other nonmedical officials rightfully relied on the medical staff and Dr. Wang to make all decisions regarding the proper course of medical treatment for Godfrey's conditions. As such, they cannot be held liable under § 1983 for failing to order Godfrey a special diet or new glasses, for failing to arrange for him to see medical specialists or receive other specific medical treatment, as such decisions were properly deferred to Dr. Wang or other medical staff. Accordingly, the court will dismiss all Godfrey's claims concerning his course of medical treatment at the Danville Jail except as to his allegations that the specified medical officials deliberately failed to provide treatment for his chronic pain and other serious medical conditions.[4]

Second, Godfrey's allegations about the loss of his eye glasses do not state any constitutional claim. Officer Martin allegedly refused to allow Godfrey to take his eye glasses or other property when he was transported from the SWVRJ to the Danville jail at the end of April 2006. Even assuming that Godfrey can demonstrate a serious medical need for the eye glasses, he does not allege

---

[4]In a recent pleading, Godfrey complained that the Danville jail's transport officers did not provide him with food, water, or medication during the trip to PCC and failed to inform PCC officials of his medical records. He does not name individual officers as defendants to this claim as directed by the court. Thus, he fails to state a claim against anyone regarding these allegations. Moreover, he fails to allege facts indicating that the transport officers were aware that failure to provide food, water and medication to the inmate during the trip from Danville to PCC placed him in any significant risk of serious harm. If the officers did not know of a serious risk, the court cannot find that they were deliberately indifferent to that risk. Farmer, 511 U.S. at 837. Therefore, the court will dismiss this claim, pursuant to § 1915A.

7

that Martin purposely deprived him of his eye glasses or that Martin knew that of any serious risk of harm Godfrey faced without his glasses. The court will dismiss this aspect of Godfrey's medical complaints.

Third, Godfrey attempts to raise claims that Danville officials, knowing that medical care was lacking at PCC, purposely had the VDOC send Godfrey to PCC so that he would suffer. He fails to allege any facts from which he could prove this conclusory assertion, however. As a defendant must have personal involvement in a constitutional violation in order to be liable under § 1983, West v. Atkins, 487 U.S. 42 (1988), the court must dismiss these allegations for failure to state any actionable claim.

Fourth, Godfrey's claims about uncomfortable living conditions at the Danville jail fail under Farmer. 511 U.S. at 837. He says that he complained to Danville jail officials about the heat, the food, the noise, being placed in "the hole,"[5] and so on. He simply does not allege facts, however, sufficient to suggest that prison officials knew these conditions placed him at any significant risk of serious harm. "To the extent that [prison living] conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

Godfrey also raises numerous complaints about living conditions and medical treatment at PCC. These claims are not properly part of this action, as they relate to a different place and time period. Moreover, the individuals responsible for Godfrey's health and well being at PCC likely reside in the jurisdiction of the United States District Court for the Eastern District of Virginia. As Godfrey's current allegations about PCC fail to state any actionable § 1983 claim against any defendant within the jurisdiction of this court, the court will dismiss all PCC claims without

---

[5] Godfrey also appears to complain that defendants placed him in the "hole" without due process. Because he does not allege facts indicating that conditions in the "hole" imposed any atypical hardship upon him as compared to the normal conditions of prison life, he does not demonstrate that he had a protected liberty interest in avoiding placement in the "hole"; therefore, he had no federal right to due process before being transferred there. See Sandin v. Conner, 515 U.S. 472 (1995).

8

prejudice, pursuant to § 1915A.

Finally, several of Godfrey's named defendants, such as the Attorney General of Virginia[6] and Godfrey's defense team, had no personal involvement whatsoever in the alleged violations of his rights at the Danville jail. Godfrey's conclusory allegations that these and other individuals knew of the alleged constitutional violations are not enough to state claims against these people, absent specific allegations regarding the specific source of their knowledge of, and their level of responsibility for, such matters. The doctrine of respondeat superior does not apply in § 1983 cases. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984). These claims will be dismissed.

### IV.

In conclusion, with the exception of limited medical claims, the complaint as amended will be dismissed, pursuant to § 1915A, because Godfrey has not alleged facts stating any other actionable claims under § 1983.[7] A separate order will issue this day.

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for defendants.

ENTER: This 21st day of August, 2006.

                                            *James C. Turk*
                                      Senior United States District Judge

---

[6]Plaintiff also moves for an order directing law enforcement authorities to investigate plaintiff's allegations that jail officials have violated state and federal laws. He is hereby advised that the court cannot order criminal investigations as relief in a civil action under § 1983.

[7]Plaintiff has also requested court appointed counsel in this case. As plaintiff's allegations do not indicate that he has any claim for relief in federal court, he fails to demonstrate that appointment of counsel is warranted in this case.

9